**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 2:17CR67** |
| | ) | |
| **GREGORY KYLE SEERDEN** | ) | |
| | ) | |
| **Defendant.** | | |

## DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS

The Defendant, Gregory Kyle Seerden, by counsel, in accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements, as well as this Court's sentencing Order, hereby represents that he has reviewed the Probations Officer's Presentence Report (PSR). He has four objections to the report. Mr. Seerden hereby states his position with respect to sentencing factors.

## THE SENTENCE REQUESTED

Mr. Seerden is before this Court for sentencing after pleading guilty on September 20, 2017 to Count One of the Indictment, charging him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) & (e). Sentencing is set for February 15, 2018.

For the reasons set forth herein, Mr. Seerden respectfully asks this Court to impose a sentence to the mandatory minimum of 180 months' imprisonment. In sum, he is a 31 year old man with no criminal history [redacted], dedicated his life to protecting others, and served this country. As discussed in more detail below, Mr. Seerden has already witnessed and experienced more than most people will in their lifetime. And, for the first time in his life, he is learning to cope with his emotional issues in a healthy manner.

As a result of his conduct bringing about the current offense of conviction, he has suffered from immense public and private shame and embarrassment. He has lost his job in the Navy, his

peers have abandoned him, and he will go from serving our country to serving time in prison. Mr. Seerden will forever be branded and subject to lifetime registration under the Sex Offender Registration and Notification Act. A sentence to the mandatory minimum of fifteen years will more than satisfy the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

## GUIDELINE OBJECTIONS

### 1. Involvement of a Sexual Act or Sexual Contact

The probation officer assigned Mr. Seerden a two (2) level enhancement for the offense involving "the commission of a sexual act or sexual contact" pursuant to U.S.S.G. §2G2.1(b)(2)(A). PSR ¶ 23. Section 2G2.1(b)(2)(A) calls for a two-level enhancement to the base offense level if the offense involved the commission of a "sexual act" or "sexual contact." Mr. Seerden submits that application of this enhancement constitutes impermissible double counting.

Double counting occurs when a Guidelines provision is applied based on considerations that have already been accounted for by another provision or by statute. *United States v. Clark*, 442 F. App'x 774, 775 (4th Cir. 2011) (citing *United States v. Reevey,* 364 F.3d 151, 158 (4th Cir. 2004)); *see also United States v. Pena*, 339 F.3d 715, 719 (8th Cir. 2003) ("Double counting occurs when 'one part of the [Sentencing] Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the [Sentencing] Guidelines.") (citations omitted); *United States v. Singo*, 680 Fed. Appx. 190 (4th Cir. 2017) (citing *United States v. Dowell*, 771 F.3d 162, 170 (4th Cir. 2014)). Here, application of the two-level enhancement pursuant to §2G2.1(b)(2)(A) would constitute impermissible double counting because the statute of conviction and corresponding base offense level for Mr. Seerden's offense of conviction under 18 U.S.C. § 2251 already accounts for the

commission of a sexual act or sexual contact. Title 18 of the United States Code Section 2251(a) provides that:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C.A. § 2251 (West).

"Sexually explicit conduct" is thus an essential element of § 2251 and is required to violate the statute. Section 2256(2)(A) defines "sexually explicit conduct" as "actual or simulated – (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person[.]" 18 U.S.C. § 2256(2)(A).

Pursuant to U.S.S.G. §2G2.1(b)(2)(A), a two level increase should apply "[i]f the offense involved the commission of a sexual act or sexual contact[.]" U.S.S.G. §2G2.1(b)(2)(A). The Guidelines adopt the definition of "sexual act" and "sexual contact" in 18 U.S.C. §§ 2246(2) & (3). *See* U.S.S.G. § 2G2.1(b)(2)(A), comment. (n.2). Title 18 of the United States Code Section 2246(2) defines "sexual act" as:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or aSeerden or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or aSeerden or gratify the sexual desire of any person[.]

18 U.S.C.A. § 2246 (West). "Sexual contact" includes "intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]" 18 U.S.C. § 2246(3).

Because the statute (18 U.S.C. § 2251) and the corresponding base offense level, as set forth in U.S.S.G. §2G2.1(a), already account for Mr. Seerden's sexual act or contact and because §2G2.1(a) and §2G2.1(b)(2)(A) do not "address conceptually separate sentencing notions," then application of the two level enhancement pursuant to §2G2.1(b)(2)(A) would constitute impermissible double counting. *United States v. Phillips*, 506 F.3d 685, 688 (8th Cir. 2007); *see also Clark*, 442 F. App'x at 775; *United States v. Dudley,* 463 F.3d 1221, 1226–27 (11th Cir.2006) ("Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.") (quotation marks omitted).

In *United States v. Cubero*, 754 F.3d 888, 894 (11th Cir. 2014), the Eleventh Circuit held that there was no impermissible double counting where the defendant's act of distribution, in violation of 18 U.S.C. § 2252(a)(2), was not "fully accounted for" by application of the base offense level set forth in U.S.S.G. §2G2.2(a)(2). The court reasoned that because the statute could

be violated by possession, receipt, or distribution, then distribution was not an essential element of the offense and thus not fully accounted for by the base offense level.[1] *Id.*

In comparison, here, "sexually explicit conduct" is an essential element of Mr. Seerden's § 2251 offense and is required to violate the statute. Therefore, "sexual act" or "sexual contact" is necessarily included for a base offense level. *Cf. United States v. Clark,* 316 F.3d 210, 213 (3d Cir. 2003) (rejecting enhancement when the obstruction-providing a forged birth certificate to authorities-was identical to the offense of falsely representing oneself as a United States citizen); *United States v. Lamere,* 980 F.2d 506, 516-17 (8th Cir. 1992) (rejecting enhancement when the obstruction-concealing counterfeit money from investigators-was identical to the offense of possessing or concealing counterfeit money)

Accordingly, the defense requests that this Court find that the two level enhancement does not apply to Mr. Seerden.[2]

**2. <u>Chapter Four Enhancement</u>**

Mr. Seerden objects to the probation officer's application of the Chapter Four enhancement for repeat and dangerous sex offenders against minors. *See* PSR ¶¶ 30, 37, 39 & 56. Section 4B1.5(b)(1) provides that:

---

[1] *Accord United States v. Reingold*, 731 F.3d 204, 227-28 (2d Cir. 2013) ("First, distribution need not be present in every conviction under the statute at issue. Section 2252(a)(2) proscribes the knowing receipt *or* distribution of child pornography. . . . Second, neither the applicable Guideline, U.S.S.G. § 2G2.2, nor the base offense level dictated by that Guideline for this case, is limited to distribution crimes. Guideline § 2G2.2 sweeps broadly to address a wide range of criminal conduct occurring after child pornography has been produced. . . . To assist sentencing judges in distinguishing among such varied crimes and assessing their severity in particular cases, § 2G2.2 draws various distinctions. . . . This structure cannot be understood to address the harm associated with the distribution of child pornography in a base offense level of 22 that applies equally to a variety of offenses, some involving distribution and others not. Rather, § 2G2.2 is structured so that the range of harms associated with distribution can be addressed through various enhancements."); *United States v. Salim,* 549 F.3d 67, 76 (2d Cir. 2008) (holding that no double counting concern arises where Guidelines enhance for "additional factor that will not be present in every conviction under the statute" (internal quotation marks omitted)).

[2] In the alternative, should this Court find that there is not impermissible double counting, then Mr. Seerden submits that the substantial overlap between the guidelines warrants application for a downward variance that is within the discretion of this Court.

> (b) In any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
> (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three. However, if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from §3E1.1.

U.S.S.G. § 4B1.5(b)(1). "Prohibited sexual conduct" is defined as "any of the following: (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography. It does not include receipt or possession of child pornography. 'Child pornography' has the meaning given that term in 18 U.S.C. § 2256(8)." U.S.S.G. § 4B1.5(b)(1), comment. (n.4(A)). Under this subsection, a "pattern of activity" will be found when "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5(b)(1), comment. (n.4(B)). "An occasion of prohibited sexual conduct may be considered for purposes of §4B1.5(b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." *Id.*

Mr. Seerden submits that this enhancement does not apply to him because the alleged prior conduct with his daughter does not qualify as a "prohibited sexual conduct" and he did not engage in said conduct on at least two separate occasions. Furthermore, the allegations against him involving his daughter are unsubstantiated claims. Even the District Attorney previously declined to prosecute "due to the lack of corroborating information." PSR ¶ 39.

* * *

Should the Court sustain all of Mr. Seerden's Guideline objections, his total adjusted offense level would be 39, resulting in an advisory guideline range of 262-327 months.

## NON-GUIDELINE OBJECTIONS

### 1. PSR Paragraphs 7 through 9

Mr. Seeden objects to paragraphs 7 through 9 of the PSR, which recite non relevant conduct to the crime of conviction.

### 2. PSR Paragraphs 39 & 56 – Pending Charges

Paragraphs 39 and 56 of the PSR describes pending state charges alleged against Mr. Seerden in California. According to the PSR, charges were filed against Mr. Seerden on July 25, 2017 in the Superior Court of California, County of San Diego, Central Division, for alleged sexual related acts with a child ten years old or younger. PSR ¶ 39. Mr. Seerden objects to the factual allegations supporting the charges in these paragraphs.

## THE APPROPRIATE SENTENCE IN THIS CASE

The overriding principle and basic mandate of 18 U.S.C. § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2). This requirement is not just another factor to be considered along with the others set forth in Section 3553(a), but instead, sets an independent limit on the sentence.

Accordingly, Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing. The law must "tak[e] into account the real conduct and circumstances involved in sentencing" as well as the defendant's

personal history and characteristics. *Gall v. United States*, 552 U.S. 38, 54 (2007); 18 U.S.C. § 3553(a)(1). The Court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 52.

**<u>The Nature and Circumstances of the Offense as They Relate to the Sentencing Factors</u>**

Mr. Seerden's conduct is explained in the Statement of Facts and incorporated into the PSR. ECF No. 41; PSR ¶ 5. In sum, Mr. Seerden was a member of the United States Navy Seal Team. During his holiday break, on or about January 1, 2017, Mr. Seerden went to visit [redacted]. Metadata later retrieved from Mr. Seerden's cellphone revealed that four videos were created with his cellphone the night that he stayed in the room. The four videos are a short sequential series depicting Mr. Seerden masturbating next to a sleeping minor female. Further investigation of the cellphone revealed downloaded images of child pornography.

Mr. Seerden recognizes what he did was very wrong and he is deeply regretful. He understands the gravity of his offense; however, he respectfully ask this Court to take into consideration that during his conduct, the child was asleep the entire time, she was unaware of the video being taken, she apparently suffered no physical or emotional harm, and the images were not distributed. *See United States v. Bruffy*, 2012 WL 1003503, at *4 (D. Ct. W.D. Virginia, March 26, 2012) (applying a downward variance where the defendant was charged with two counts of production of child pornography and one count of possession of child pornography, because, in part, the images did not show the child's face, the child was asleep, the child was unaware of the photographs being taken, the child appeared to suffer no physical or emotional harm, and the images were not distributed).

Mr. Seerden has pled guilty and accepted full responsibility. He has been cooperative with all aspects of the investigation and admitted to his actions.

**The History and Characteristics of Mr. Seerden as They Relate to the Sentencing Factors**

Mr. Seerden had a very atypical childhood. He grew up in Kansas City, Missouri, along with his younger brother[3]. When he was six years old, his parents divorced. Unfortunately, his mother suffered from seizures, leaving her unable to care for her children. With Mr. Seerden's father gone, this meant Mr. Seerden and his brother were often left unattended and without a strong male role model in their lives.

[REDACTED]

Despite the whirlwind of a childhood, one thing always remained true and steady: Mr. Seerden's desire to protect others. Mr. Seerden managed his mother's medications and doctor's visits, as well as the family finances. He did everything in his power to keep his brother safe, [redacted]. Not only did Mr. Seerden care for his mother and protect his brother, he also watched over Monica's three children.

Instinct, training, and desire to protect his family naturally carried over into his career in the Navy, where he served and protected others for eleven years. As a member of the SEAL Team, he protected those who risked their lives alongside him, and he risked his own life for the greater protection of this nation.

[3] The defense simultaneously files a letter (Def. Exh. #1) from Mr. Seerden's brother, Matthew Seerden, under seal for the Court's consideration. In this letter, Matthew Seerden, discusses and confirms [redacted] Mr. Seerden endured.

Mr. Seerden joined the Navy in 2005 and within two years, he became a SEAL Team member. He also quickly advanced to an E-6 rank.[4] Mr. Seerden is the recipient many prestigious military awards, including: Afghanistan Campaign Medal; Combat Action Ribbon; Good Conduct Medal (2); Navy and Marine Corps Achievement Medal; NATO Medal; Navy and Marine Corps Commendation Medal (2 (one with Combat "V")); Sea Service Deployment Ribbon; Global War on Terror Expeditionary Medal; Combat Action Medal; OIR Campaign Ribbon; and Navy Achievement Medal. In addition to his medals, he has an extensive list of notable trainings, such as: BUD/S Indoctrination; BUD/S training; SEAL Cold Weather Warfare training; SEAL Advanced Close Quarters Defense training; Naval Special Warfare Communications training; Naval Special Warfare Reconnaissance and Scout training; and Naval Special Warfare Sniper training. His Evaluation Reports and Counseling Records describe his job performance as "Greatly Exceed Standards", "Outstanding personal performance during physically and mentally arduous training continuum", "Tremendous asset – mature, trusted operator", "Team player", "Ready for increased responsibility", "A top performer", "Frequently sought out for his expertise in complex situations and problem solving ability", "Exceptional Leader!", and "My strongest recommendation for LCPO. Promote now!".

All of Mr. Seerden's achievements, while certainly notable, did not come without sacrifice or a price. During his time in Navy, he suffered numerous injuries. In 2006, Mr. Seerden suffered a left knee injury, and one year later, a right foot injury. He has fallen victim to multiple head injuries as well. In October 2009, for example, he lost consciousness after he was next to a rocket-propelled grenade that was fired. Two months later, in December 2009, he endured a hard landing while conducting a boat training that resulted in post concussive syndrome for at least two

[4] Attached to this pleading, marked Defendant's Exhibit #2, is a summary chart of Mr. Seerden's Navy career noting his various awards and performance evaluations

days following the incident. Subsequently, in June 2010, he was in a boat accident that caused him to land on his head and have a neck injury. He still has neck and back issues as a result of this injury. It was not until March of 2011 that he underwent an MRI to evaluate the cause of sharp pain to his neck and left scapula. More recently, in May 2016, he underwent physical therapy for his right arm and shoulder. In addition to his shoulder, neck, knee, arm, and head injuries, he also has a history of upper respiratory infection, gastroenteritis viral, noise induced hearing loss, gastrointestinal distress, reflux, and cuboid dysfunction.

Not only does Mr. Seerden suffer from physical injuries, he also suffers from post-deployment paranoia and insomnia. Mr. Seerden's past experiences and time in the Navy haunt him daily and he is unable to sleep at night without the aid of medication, which he has had a difficult time obtaining since being in custody for the instant offense.[5] Without the proper medical treatment, Mr. Seerden continues to battle depression and sleep issues.

Alcohol addiction was unfortunately another outcome that can be largely attributed to his job in the military. Mr. Seerden and others he worked with were functioning alcoholics. The stress of their jobs caused them to drink more, and they all enabled each other to do so without ever raising any concern about the high level of alcohol consumption. Mr. Seerden desperately desires to seek substance abuse treatment to aid in his recovery and properly address his underlying issues.

Despite his actions bringing about the instant offense of conviction, Mr. Seerden has many redeeming qualities and the current charge should not overshadow his entire person. He was a

[5] Mr. Seerden was recently proscribed Zoloft, but feels that it is not helping. He also took Trazodone but had an allergic reaction to it. He is currently scheduled to see the doctor soon, who will hopefully proscribe him a new medication.

caretaker for his mother, brother, and half siblings. He is a protector for his loved ones and our nation. He is a survivor himself.

Mr. Seerden's absence of a criminal history, extensive childhood of [redacted], and dedicated service to this Country, strongly suggest that a sentence to the mandatory minimum is sufficient but not greater than necessary to comply with the purposes set forth in § 3553(a). *See, e.g.*, *United States v. Graf*, 2008 WL 5101696 (E.D. Wis. Dec. 1, 2008) (defendant's military experience, his low risk of recidivism, and his positive personal qualities are proper grounds for a variance); *United States v. Nellum*, 2005 WL 300073, *4 (N.D. Ind. 2005) (finding a defendant who honorably served his country relevant when considering his history and characteristics).

**Motion for Downward Departure Pursuant to U.S.S.G. § 5H1.11**

In determining whether a sentence outside the applicable guideline range is warranted, this Court may consider Mr. Seerden's extensive military service. Mr. Seerden's dedicated military service, discussed *supra*, warrants a downward departure from the advisory guideline range pursuant to U.S.S.G. § 5H1.11. Mr. Seerden did not just serve in the Navy, he dedicated his life to the Navy for the past eleven years, including at least two full years that were spent overseas in combat. He was honored to serve as a Navy SEAL, performing some of the most dangerous and physically and mentally challenging duties ever asked of a service member. He excelled on trainings and in every demand of the job, which is reflected by his receipt of numerous awards and high performance evaluations. Mr. Seerden's degree of military service distinguishes him from other typical cases and warrants a downward departure from the guidelines pursuant to U.S.S.G. §5H1.11. *See, e.g.*, *United States v. Canova*, 412 F.3d 331 (2d Cir. 2005) (holding that the district court did not abuse its discretion by granting downward departure to defendant's sentence on basis of his extraordinary public service and good works, where the defendant, who served six years in

the Marine Corps, mostly in the reserves, and was a volunteer firefighter for seven years whereupon he sustained injuries in the line of duty three times, demonstrated that his commitment to helping persons in distress was instinctive part of his character); *United States v. Henley*, 50 F.3d 1032 (5th Cir. 1995) (finding no erroneous application of a downward departure where the defendant "did more than merely serve in the armed forces; he served on active duty for twenty years, including service in Vietnam. During his career Henley received numerous decorations recognizing the quality of his service to his country. Such an extended, exemplary military record reflects a positive contribution to society . . . [and] distinguished service in the armed forces"); *Porter v. McCullom*, 558 U.S. 30 (2009); *United States v. Williams*, 332 F.App'x 937, 941 (5th Cir. 2009) (noting that a defendant's service to his country is admirable and worthy of consideration as a mitigating factor supporting a downward departure). *Compare with United States v. Gonzales*, 163 F. Supp. 3d 1078, 1116 (D.N.M.), *aff'd*, 844 F.3d 929 (10th Cir. 2016) (denying departure where the majority of the defendant's military career was not spent in intense combat, but rather, spent in the support role of a mechanic).

**The Requested Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law, Provides Just Punishment, Affords Adequate Deterrence, and Protects the Public**

Mr. Seerden respectfully submits that a sentence to the mandatory minimum of fifteen years is sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to both Mr. Seerden and the public.

The sentence suggested by the defense is sufficient to protect the public from Mr. Seerden. Fifteen years' imprisonment is enough time to allow Mr. Seerden to obtain mental health and sex offender treatment, which will help lower his risk of recidivism. Additionally, upon his release from incarceration, he will be subject to supervised release conditions and must register as a sex offender. Given that he will be subject to a rigid set of rules, and his history in the military has

proven that he does well in structured situations, Mr. Seerden is unlikely to pose a future threat to society.

Furthermore, a lengthier sentence matching the Guideline recommendation would not necessarily result in a lower risk of recidivism. In fact, the opposite is true, especially for defendants like Mr. Seerden who have never been previously incarcerated. *See, e.g.*, *United States v. Graf*, No. 07-CR-320, 2008 WL 5101696, at *2 (E.D. Wis. Dec. 1, 2008) citing *United States v. Qualls,* 373 F.Supp.2d 873, 877 (E.D.Wis.2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."). Research indicates that the *severity* of punishment is *less* likely than the *certainty* of punishment to produce deterrent benefits. *See* Valier Wright, *Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project, at 1 (Nov. 2010) (emphasis in the original); *see also* Anthony N. Doob & Cheryl Marie Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 CRIME & JUSTICE 143, 146 (2003) ("harsh sentences do not deter"). Thus, sentencing Mr. Seerden within or above his advisory sentencing guideline range would *not* increase deterrence. To best deter Mr. Seerden from committing offenses in the future, providing mental health counseling and substance abuse treatment would serve as better alternatives to an extended period of incarceration.

Similarly, the Sentencing Project report notes that more severe sentences fail to enhance public safety. Contrary to ideology that "putting people in prison for years or even decades should prevent offenders from re-offending by incapacitating them and/or deterring would-be-offenders from committing crimes[,]" studies fail to support these assertions. *Valier Wright, Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment, The Sentencing Project,* at 6.

A series of studies, examining the public safety effects of imposing longer periods of imprisonment, reveal that longer prison sentences were associated with a three percent increase in recidivism compared to shorter sentences. *Id.* In fact, "[o]ffenders who spent an average of 30 months in prison had a recidivism rate of 29%, compared to a 26% rate among prisoners serving an average sentence of 12.9 months." *Id.* Because a sentence longer than the one requested by the defense will not benefit Mr. Seerden or the community, Mr. Seerden respectfully requests a sentence below the advisory guideline range to the statutory mandatory minimum of fifteen years' imprisonment.

Sentencing Mr. Seerden to fifteen years' incarceration, followed by a period of supervised release and registration to the sex offender registry would also sufficiently reflect the seriousness of the offense. Mr. Seerden certainly understands the gravity of his offense; however, he respectfully ask this Court to take into consideration that the child was asleep and unaware of the video being taken, the child apparently suffered no physical or emotional harm, and the images were not distributed.

Mr. Seerden is fully aware of the consequences of his actions and he recognizes that his lapse of judgment and behavior has significantly impacted those he loves. Mr. Seerden's poor decisions were uncharacteristic of him. He feels genuine disappointment in himself and regrets his actions that have now stripped him of everything he had.

Beyond the direct and immediate consequences of his actions, Mr. Seerden is also subjected to a number of collateral consequences he will face as a convicted felon.[6] Under federal

[6] While there is a circuit split as to whether the collateral consequences of conviction can legally be considered as § 3553(a) factors when fashioning a sentence, the Fourth Circuit has clearly held that such considerations are permissible. *See United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (viewing the loss of the defendant's "teaching certificate and his state pension as a result of his conduct" as appropriate sentencing considerations, "consistent with § 3553(a)'s directive that the sentence reflect the need for 'just punishment' and 'adequate deterrence.'"); *Cf. United States v. Nesbeth*, No. 15-CR-18 (FB), 2016 WL 3022073, *17 (E.D.N.Y. May 24, 2016)

law alone, a felony convictions may render an individual ineligible for public housing, section 8 vouchers, Social Security Act benefits, supplemental nutritional benefits, student loans, certain tax credits, and more. *See United States v. Nesbeth*, No. 15-CR-18 (FB), 2016 WL 3022073, *12-13 (E.D.N.Y. May 24, 2016) (citations omitted). In addition to the general reluctance of employers to hire ex-offenders, felony convictions disqualify individuals from holding various positions. *Id.* at 13. Inability to procure and maintain employment results in further disastrous consequences, such as going homeless. *Id.* In this way, the statutory and regulatory scheme contributes heavily to many ex-convicts becoming recidivists and restarting the criminal cycle. Thus, "public safety is better served when people with criminal convictions are able to participate as productive members of society by working and paying taxes." *Doe v. United States*, 2015 WL 2452613, No. 14-MC-1412, at *8 (E.D.N.Y. May 21, 2015).

These broad range of collateral consequences serve no useful function other than to further punish people, like Mr. Seerden, after they have completed their court-imposed sentences. *See id.* at *2. Once Mr. Seerden re-enters society, he will need to search for new employment, which will be difficult with the offense of conviction on his record.

Given that Mr. Seerden's lack of criminal history, honorable military service, and demonstrated ability to follow directions, there is a reduced need to protect the public from future crimes committed by Mr. Seerden, especially if he participates in sex offender treatment, substance abuse treatment, and receives mental health care to address his childhood and professional traumas.

**<u>Kinds of Treatment</u>**

As detailed in the PSR, and noted *supra*, Mr. Seerden has a history of alcohol abuse. PSR ¶¶ 57-58, 85-88. Mr. Seerden turned to alcohol to self-medicate his battle with depression and the

---

("It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence.").

stress of his job as a Navy SEAL. He used drinking as a way to distract himself from the memories of his horrible childhood, failed marriage, and time at war as a Navy SEAL. After his last combat deployment, Mr. Seerden finally sought help for his alcoholism, but he only progressed through a few sessions before he was arrested for the instant offense. Mr. Seerden could benefit from a structured substance abuse treatment, such as the Bureau of Prisons' Residential Drug Abuse Program (RDAP). Attending a treatment program is more effective at reducing recidivism and is cost effective on the community. *See* Valerie Wright, *Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project, at 8 (Nov. 2010) ("While there are costs associated with treatment, research indicates that they tend to be far lower than the costs associated with lengthy terms of incarceration that show little evidence of deterring future offenses."). Mr. Seerden would like to participate in a substance abuse treatment program while incarcerated.

Mr. Seerden would also benefit from sex offender treatment and mental health services.

**Avoiding Unwarranted Sentence Disparities**

This Court must also consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

A sentence below the advisory guideline range to fifteen years imprisonment would be consistent with other courts around the country. In the fourth quarter of Fiscal Year 2017, district courts around the country sentenced below the advisory guideline range in over 50% of cases sentenced under U.S.S.G. § 2G2.1. *See* United States Sentencing Commission, *Preliminary Quarterly Data Report, 4th Quarter Release, Preliminary Fiscal Year 2017 Data through September 30, 2017* (available at https://www.ussc.gov/sites/default/files/pdf/research-and-

publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_4th_FY17.pdf). Of cases receiving below guideline sentences, over half were not based on government sponsored motions. *Id.* Thus, the majority of people receiving below guideline sentences received them as a result of consideration of the § 3553(a) factors rather than as a result of a government motion.

In child pornography cases that received non-government sponsored below guideline range sentences, the median sentence was 72 months, with a median decrease of 49 months from the guideline minimum. *Id.* This translated to a 38% median percent decrease from the guideline minimum in child pornography-related cases. *Id.* If this Court sustains Mr. Seerden's objections, his guideline minimum would be 262 months. Factoring in a 38% decrease, which is consistent with the other courts in the country, would result in a sentence below his fifteen year statutory mandatory minimum. Thus, the mandatory minimum sentence to fifteen years' incarceration is more than sufficient in this case.

Likewise, in 2017, there were 602 sentences resulting from sexual abuse-related cases. *Id.* The report identified sexual abuse to include "sexual abuse of a minor, transportation of minor for sex, sexual abuse of a ward, criminal sexual abuse, and abusive sexual contact." *Id.* at A-4. Of the 602 cases, 44% received a within guideline sentence, while just over 50% receive a below guideline range sentence. *Id.* at 15 (Table 10). Of the below-guideline sentences, about 21% were non-government sponsored below range sentences. *Id.* Of the non-government sponsored below range cases, the median sentence for sexual abuse cases was 96 months and the median decrease was 30 months from the guideline minimum. *Id.* at 26. The median percent decrease from the guideline minimum was 31.3%. *Id.* If Mr. Seerden's objections are sustained and his guideline minimum is 262 months, factoring in the average 31% decrease would result in a sentence to 181

months. This sentence of 181 months is on par with the defense's suggested sentence to 15 years (180 months).

A sentence to 15 years would also avoid unwarranted sentencing disparities among others who have been convicted and sentenced for similar conduct. In *United States v. Galo*, for example, the defendant was sentenced to fifteen years after he threatened his girlfriend into letting her thirteen year old daughter stay with him, where he then took over 31 sexually explicit nude photographs of the child after instructing her to pose nude and expose her genitals. 239 F.3d 572, 573-74 (3d Cir. 2001).

In *United States v. Ortiz-Graulau*, the defendant, a thirty-eight year old man, engaged in sexual relations with a fourteen year old female. 526 F.3d 16, 17-18 (1st Cir. 2008). On several occasions, the defendant took photographs that depicted the child in sexual activities or posed in a sexually explicit manner. *Id.* Over 50 photographs of such nature were revealed. *Id.* The defendant was convicted of one count of possession of sexually explicit photographs of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B) and one count of exploiting a minor for the purpose of producing the photographs, in violation of 18 U.S.C. § 2251(a). As a result of his offenses, the defendant was sentenced to 180 months (15 years) of imprisonment. *Id.*

In *United States v. Schuster*, 706 F.3d 800 (7th Cir. 2013), the defendant was sentenced to 262 months of imprisonment after pleading guilty to knowingly using a minor to produce child pornography on three separate occasions with three different young victims (two of whom were related to the defendant). The sentence imposed was eight years under the advisory guidelines of thirty years. *Id.*

In *United States v. Hinkley*, 803 F.3d 85 (1st Cir. 2015), the defendant manipulated two boys' parents to allowing their sons, who had special education needs, to spend the night at his

apartment. The defendant then showed the boys his knife collection and threatened to cut off their genitalia if they did not watch pornography and masturbate in front of him using sex toys. *Id.* at 88. The defendant also used a webcam to stream the images on a social media site. *Id.* at 88-89. With a guideline range of Life and a statutory maximum of 360 months, the court departed downward and sentenced the defendant to 300 months, in part due to the defendant's lack of criminal history and own history of sexual abuse as a child. *Id.* at 85.

In all of these cases, the defendant's conduct was more egregious than that of Mr. Seerden's in the instant offense of conviction. As such, imposing a sentence of fifteen years' imprisonment for Mr. Seerden would avoid unwarranted sentencing disparities and be sufficient but not greater than necessary as directed by § 3553(a).

## CONCLUSION

In short, Mr. Seerden has no prior record and has served this Country for over a decade. Mr. Seerden [redacted] is extremely remorseful and ashamed of his own actions. Mr. Seerden respectfully moves for a sentence of fifteen years of imprisonment, the mandatory minimum. Such a sentence is sufficient to comply with the factors set forth in 18 U.S.C. § 3553(a).

Mr. Seerden also respectfully requests the Court to recommend to the Bureau of Prisons that he be imprisoned in a facility as close to San Diego, California as possible.

Respectfully submitted,

GREGORY KYLE SEERDEN

By /s/

Keith Loren Kimball
Supervisory Assistant Federal Public Defender
Virginia State Bar No. 31046

Attorney for Gregory Kyle Seerden
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0870
Facsimile: 757-457-0880
Email Address: Keith_Kimball@fd.org

Lauren Shuman
Research and Writing Attorney
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Facsimile: 757-457-0880
Email Address: Lauren_Shuman@fd.org

Andrew W. Grindrod
VSB # 83943
Assistant Federal Public Defender
Attorney for Gregory Kyle Seerden
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Facsimile: 757-457-0880
Email Address: Andrew_Grindrod@fd.org

**CERTIFICATE OF SERVICE**

I certify that on the 8th day of February, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Elizabeth M. Yusi
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-6331
Fax: (757) 441-6689
Email: elizabeth.yusi@usdoj.gov

David A Layne
Special Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Email: david.layne@usdoj.gov

And I hereby certify that I will mail the document to the following non-filing user:

Cathleen C. Yetzer
United States Probation Officer
600 Granby Street, Suite 200
Norfolk, Virginia 23510
Email: Cathleen_Yetzer@vaep.uscourts.gov

/s/

Keith Loren Kimball, Esquire
Supervisory Assistant Federal Public Defender
Virginia State Bar No. 31046
Attorney for Gregory Kyle Seerden
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0870
Facsimile: 757-457-0880
Email Address: Keith_kimball@fd.org